*J. McCabe*, for appellant.

---

## Murray and Others *v.* Kelly and Others.

New Trial.—Real Action.—No notice is required of an application for a new trial, as of right, under section 601 of the code.

Descents.—Aliens.—At the common law an alien had no inheritable blood, and could neither take land himself by descent, nor transmit it to others, and alienage in any mediate ancestor interrupted the descent.

SAME.—The statute removes this disability in favor of a *bona fide* resident alien.

SAME.—TITLE OF LAW.—The subject of the "act concerning real property and the alienation thereof," (1 G. & H., 255,) is sufficiently expressed in the title.

APPEAL from the *Wabash* Circuit Court.

GREGORY, J.—*Patrick Brady*, a native of *Ireland*, but for many years a resident of this State, died at *Wabash* county in 1837, seized in fee of the lands involved in this suit, leaving as his sole heir at law, his son, *John P. Brady.* The mother of the latter, and widow of the former, died in 1843. *John P. Brady* died, intestate, at *Wabash* county, in *January*, 1857, seized in fee of the lands thus inherited from his father.   *John P.*, at his death, left neither father or mother, brother or sister, or children, surviving him.

This action was instituted by the appellees, who claim to be the next of kin of *John P. Brady*, on the paternal side, to quiet their title to the real estate in question, and to enjoin the appellants from setting up or asserting any claim to it.   The appellants claim the land as the next of kin of *John P. Brady* on the maternal side.   The case was tried before a jury, and a verdict was rendered for the appellees, upon which a judgment was entered for them at the *September* term, 1860.

At the *September* term, 1861, in the absence of Judge BIDDLE, who was the regular judge of the *Wabash* Circuit Court, upon the application of the appellants, and upon payment of costs, the judgment was set aside, and a new trial was granted them by Hon. *K. G. Shryock*, who was then sitting as judge *pro tem.*   This was without notice to the appellees, nor did they appear.

At the *September* term, 1862, the case again came up for trial, in the absence of Judge BIDDLE, and, by his appointment, before Judge WORDEN, of the Supreme Court.   The appellees, by special appearance, moved the court to set aside the order of Judge SHRYOCK, vacating the former judgment and granting the appellants a new trial.   The motion

was overruled and an exception saved, and this is assigned as a cross error by the appellees.

The cause was then tried by the court, and a finding and judgment was again rendered for appellees. At the request of appellants, the court made a special finding, as follows:

"The real estate in controversy was owned in fee by, and was in the possession of, *Patrick Brady*, in his lifetime, who was a native of *Ireland*, and who, being a resident inhabitant of this State, died in 1837. The property in controversy, upon the death of *Patrick Brady*, descended to his only child, *John P. Brady*, (this fact having been admitted on the trial of the cause.) *John P. Brady* died, seized of the property in controversy, in *January*, 1857, without issue, and without any brothers or sisters, or father or mother, grandfather or grandmother, and without nearer relatives than the plaintiffs herein. His mother, *Sarah Brady*, wife of *Patrick*, having been a native born citizen, and having died in 1843. *Patrick Brady* had two brothers, named respectively *John* and *Thomas*, and two sisters, named respectively *Mary* and *Elizabeth*, all born in Ireland. *John Brady*, one of the brothers of *Patrick*, died in Ireland in the year 1835, and has no descendants in this country. *Thomas Brady*, the other brother of *Patrick*, died in Ireland in the year 1853, leaving several children, and amongst them, *Bridget Brady*, one of the plaintiffs herein, who came to the *United States* in the year 1852, and has been since that time a *bona fide* resident of the *United States*. None of the other children of *Thomas Brady* ever came to the *United States*. *Mary Brady*, one of the sisters of *Patrick*, married *Anthony Smith*, in *Ireland*, and, with her husband, came to the *United States* in the year 1822, and settled in *Pennsylvania*, and from that time they became *bona fide* residents of the *United States*. Said *Mary* died in the year 1856, before the death of John P. Brady. The said *Smiths*, plaintiffs herein, are the children of said *Mary* and *Anthony*, and are native born citizens of the *United States*. *Elizabeth Brady*, the other sister of *Patrick*, married *Patrick Murray*,

in *Ireland*, by whom she had several children, and amongst them, *John Murray*, one of the plaintiffs herein.    Said *Elizabeth* died in the year 1835.    Neither said *Elizabeth* nor her husband ever came to the *United States*, nor did any of their children, except the said *John*, who came to the *United States* before the death of *John P. Brady*, and from the time of so coming continued to be a *bona fide* resident of the *United States*.    The above named *Bridget Brady*, *John Murray*, and the children of *Mary Smith*, formerly *Mary Brady*, are the only descendants of the brothers and sisters of *Patrick Brady* in this country.    *Thomas Kelly* and *Patrick Brady*, two of the defendants, do not appear to have any interest in the property in controversy.    The other defendants are the heirs of *Sarah Brady*, the wife of *Patrick* and mother of *John P. Brady*, and are entitled to the lands in controversy, unless the plaintiffs have a better right thereto."

It is proper that we dispose of the cross-error first.    It is claimed that the court below ought to have sustained the motion to set aside the order of Judge SHRYOCK, on two grounds: first, that SHRYOCK had no authority to act as judge; second, that there was no notice of the motion for a new trial to the appellees.    The first objection has been obviated by an amendment of the transcript of the record.

Section 601 of the code provides that "the court rendering the judgment, at any time within one year thereafter, upon the application of the party against whom judgment is rendered, his heirs, assigns or representatives, and upon the payment of all costs, and of the damages, if the court so direct, shall vacate the judgment and grant a new trial." 2 G. & H., p. 283.    A new trial under this provision is a matter of right, and no notice to the adverse party is required.

The appellants claim that the finding of the court is not sustained by the evidence.    We have looked through the testimony, and think the finding is not so clearly wrong as to justify us in interfering with it.

It is insisted that *Patrick Brady* was an alien, and was never naturalized, and therefore that his son, *John P.*, although a citizen, could not inherit, because his father had no inheritable blood. It was admitted on the trial below that "*John P. Brady* died seized of the lands in question; that they were owned by *Patrick Brady* in his lifetime, and descended from him to his son, *John P. Brady.*" This admission necessarily concedes the capacity of *Patrick Brady* to hold, and the right of *John P.* to inherit, the lands in controversy.

The appellees are the paternal cousins, and the only paternal relatives living in the *United States*, of *John P. Brady*, and the main question in this case is, are they his legal heirs? *John Murray* and *Bridget Brady* were *bona fide* resident aliens at the time of *John's* death. The mother of *John Murray*, and father of *Bridget Brady*, who were respectively the brother and sister of *Patrick Brady*, died in *Ireland*, never having been in *America*. The *Smiths* are native born citizens of the *United States*; their mother, a sister of *Patrick*, from 1822 until her death in 1856, was a *bona fide* resident alien, her husband being a naturalized citizen.

At the common law, an alien has no inheritable blood, and can neither take land himself by descent, nor transmit land from himself to others by descent; and alienage in any mediate ancestor will interrupt the descent between persons who are capable of taking and transmitting land by descent.

The statute of 1852, in force in this State at the death of *John P. Brady*, provided "that no person, except a citizen of the *United States*, or an alien who shall be, at the time, a *bona fide* resident of the *United States*, shall take, hold, convey, devise, or pass by descent, lands, except in such cases of descent or devise as are provided for by law." 1 G. & H., § 1, p. 255.

It is claimed that this statute does not remove the common law disability of an alien to inherit. We think otherwise. The statute is as broad in favor of a *bona fide* resi-

dent alien as a native born citizen. The intention of the legislature is obvious, and we are not inclined to limit its plain meaning by judicial interpretation.

It is also claimed that this statute is unconstitutional, because of a defect in the title. The title is: "An act concerning real property and the alienation thereof." Real property is the subject of the act, and this is sufficiently expressed in the title. *Reams* v. *The State*, 23 Ind. 111; *Robinson* v. *Skipworth*, *id.* 311.

We have not inquired whether *John Murray* and *Bridget Brady* can, under the law of 1852, inherit, for clearly the *Smiths* can, and this is fatal to the claim of the appellants.

The judgment is affirmed, with costs.

*J. U. Pettit*, for appellants.

*J. D. Conner* and *J. R. Coffroth*, for appellees.